# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAHOO INTERNATIONAL, INC, <br><br> Plaintiff, <br><br> vs. <br><br> PHIX DOCTOR, INC., a Florida Corporation; and DOES 1-10, <br><br> Defendants. | CASE NO. 13cv1395-GPC(BLM) <br><br> **ORDER DENYING PLAINTIFF'S *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER** <br><br> [Dkt. No. 40.] |

Before the Court is Plaintiff Wahoo International, Inc.'s ("Wahoo" or "Plainitff") *ex parte* motion for a temporary restraining order. (Dkt. No. 40.) Defendant Phix Doctor, Inc. ("Phix Doctor" or "Defendant") filed an opposition on May 15, 2014. (Dkt. No. 42.) A reply was filed on May 16, 2014. (Dkt. No. 43.) A hearing was held on May 16, 2014. (Dkt. No. 44.) Isi Mataele, Esq. appeared on behalf of Defendant and Erin Barns, Esq. and Richard Wirtz, Esq. appeared on behalf of Plaintiff. Based on the reasoning below, the Court DENIES Plaintiff's *ex parte* application for temporary restraining order.

## Background

According to Plaintiff, Wahoo is a leading manufacturer of UV cure resins. Resins are thick liquids that harden into transparent solids and used to repair fiberglass, plastics, wood and metal. The repair putty hardens in minutes, 3 minutes when exposed to UV sunlight. SOLAREZ is a unique UV cure synthetic resin. It is a clear,

non-yellowing mixture of high-strength, fiber reinforced polyester resin and a solar-activated catalyst. No mixing is required and it can be applied straight from the tube. It was the first UV cure resin on the surf market and first sold in 1987. Wahoo has invested in promotion of its product and education regarding use to the UV cure repair resin. As the first resin of its kind, Solarez has become famous in the surf, snowboard, and skate industry. Plaintiff sells its products online directly to consumers and through distributors and retailers. Its distributors are located in San Diego, CA, Ocean City, MD and Aiea, HI and they distribute to retailers across the country.

Wahoo first registered the mark SOLAREZ on April 14, 1992 (Reg. No. 1,682,565). The mark's first registration lapsed for inadvertent failure to renew in 2003, but it was re-registered on January 6, 2004 with Reg. No. 2,802,579. The registration's date of first use is June 26, 1989.

Wahoo also alleges it is the owner of a family of marks with the root suffix -rez. Plaintiff has advertised "Rez-solutions" such as SPONGEREZ for bodyboard and swimfin repair resin since 1989; NEOREZ for wetsuit repair resin since 1990; and RADREZ for snow and skateboard and skate shoe repair resin since 1992. In the surf, skate, and snowboard industry and culture, -rez is recognized by customers to be associated with Plaintiff.

Phix Doctor is a producer of fiberglass repair products and accessories. On November 29, 2011, it announced its new product "DURA REZ" on its website. According to its description, it is a fiber filled epoxy and polyester repair product and also made of resin. Its advertising states: "cures in full sun in less then 3 minutes for a professional finish that saves you time and money!" Dura Rez has a product line with distributors in California, North Carolina, and Florida as well as retailers throughout the country.

When Plaintiff discovered the infringement on its trademark, SOLAREZ, it sent a cease and desist letter dated December 10, 2012 to Phix Doctor; however, Phix Doctor never responded. In January 2013, at a Surf Expo in Orlando, Florida, Wahoo's

sales manager, Nelz Vellocido, saw Tony Gowen, a principal of Phix Doctor, exhibiting DURA REZ. At the time, Gowen told Vellocido that he would be "winding down" the use of the DURA REZ mark. However a month later, one of Plaintiff's distributors called to complain that retailers claimed to be buying Solarez from a non-Wahoo distributor. When Plaintiff's distributors called that particular retailer and asked if they carried Solarez, they said "yes, we sell Solarez." However, the store was selling Dura Rez.

In March 2013, Defendant's website was still advertising Dura Rez. Therefore, on June 14, 2013, Plaintiff filed a complaint against Defendant alleging violations of Trademark Infringement; Federal Trademark Dilution; False Designation of Origin; Injury to Business Reputation and Dilution under California Law and Unfair Competition under California Law. (Dkt. No. 1.) On June 17, 2013, Plaintiff contacted Gowen and during that conversation, Gowen said he would be willing to change his mark to Dura Resin.[1] According to Plaintiff, it indicated that Dura Resin would be acceptable and that he would dismiss the case if Gowen agreed to share in the legal expenses. But Gowen refused.

On August 29, 2013, Plaintiff received photos from a retail store in Hawaii displaying Defendant's Dura Rez on August 28, 2013. Again, on September 6, 2013, at the Surf Expo in Oralado, Plaintiff received photos showing Dura Rez displayed at the booths of two major distributors. Then again on November 5, 2013, Wahoo's products were displayed together with Defendant's DURA REZ, as if it was one of Wahoo's products. (Dkt. No. 40-11, TRO App., Ex. E.) On January 9, 2014, Plaintiff's sales representative attended the Surf Expo in Orlando, Florida and saw DURA REZn displayed. (Dkt. No. 40-12, TRO App. Ex. F.)

At the end of April 2014, Plaintiff inquired whether Defendant intended to attend the Surf Expo to be held in Del Mar, California on May 17 and 18, 2014. Defendant

---

[1] This is an issue of disputed fact. While Plaintiff states it agreed that DURA RESIN would be an appropriate change; Defendant asserts that Plaintiff agreed to DURA REZn.

did not respond until May 13, 2014 indicating that Phix Doctor would be attending the trade show and so would his "vendors" who may be displaying their products. Defendant refused to stipulate to an order enjoining him and his distributors/retailers from selling or promoting any products bearing DURA REZ and/or DURA REZn.

Plaintiff now brings this *ex parte* application for a temporary restraining order to enjoin Defendant and its distributors and retailers from using an imitation of the SOLAREZ trademark to include DURAREZ, DURA REZ, and/or DURA REZn at the May 17-18, 2014 Surf Expo in Del Mar, California. Defendant opposes.

## Discussion

The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment. Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, 415 U.S. 423, 439 (1974). The legal standard that applies to a motion for a TRO is the same as a motion for a preliminary injunction. See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n. 7 (9th Cir. 2001). To obtain a TRO or preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in the moving party's favor; and (4) that an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

Under the Ninth Circuit's "sliding scale" approach, the first and third elements are to be balanced such that "serious questions" going to the merits and a balance of hardships that "tips sharply" in favor of the movant are sufficient for relief so long as the other two elements are also met. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134–35 (9th Cir. 2011). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief," Winter, 555 U.S. at 22, and the moving party bears the burden of meeting all four Winter prongs. See Cottrell, 632 F.3d at 1135; DISH Network Corp. v. FCC, 653

1  F.3d 771, 776–77 (9th Cir. 2011).

**A.  Irreparable Harm**

Plaintiff argues that it will suffer irreparable harm if the requested injunction is not granted because of damage to its reputation and goodwill of its SOLAREZ mark and "Rez Solutions" family of marks. Defendant opposes contending that Plaintiff has not provided any evidence of irreparable harm.

A plaintiff must demonstrate irreparable injury is likely in the absence of an injunction. Winter, 555 U.S. at 20. A party seeking injunctive relief for trademark infringement must provide "evidence sufficient to establish likelihood of irreparable harm." Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc., 736 F.3d 1239, 1251 (9th Cir. 2013); Active Sports Lifestyle USA, LLC v. Old Navy, LLC, No. SACV 12-572-JVS(Ex), 2014 WL 1246497, at *2 (C.D. Cal. Mar. 21, 2014) (trademark infringement, itself, does not constitute irreparable harm and the existence of intangible harms such as loss of goodwill must be shown by evidence).

Plaintiff must also show that the harm is not only irreparable but must demonstrate immediate threatened injury. Carribean Marine Servs. Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988); Fed. R. Civ. P. 65(b)(1)(A) (plaintiff must show it faces both "immediate and irreparable injury"). A "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." Garcia v. Google, Inc., 743 F.3d 1258, (9th Cir. 2014) (quoting Oakland Tribune, Inc. v. Chronicle Publ'g, 762 F.2d 1374, 1377 (9th Cir. 1985)); see also Miller v.. Cal. Pac. Med. Ctr., 991 F.2d 536, 544 (9th Cir.1993) (noting that delay in seeking injunctive relief "implies a lack of urgency and irreparable harm.") While Plaintiff's delay is not alone decisive in determining whether he will be irreparably harmed, it is still "weighs against the immediacy of the harm." AK Metals, LLC v. Norman Indus. Materials, Inc., No. 12cv2595-IEG(WGV), 2013 WL 417323, at *10 (S.D. Cal. Jan. 31, 2013) (two-month delay).

While not addressed by either party, the Court notes the delay by Plaintiff in

1  seeking injunctive relief demonstrates lack of irreparable harm.  Plaintiff was aware
2  about Defendant's alleging infringement as early as December 2012 when Plaintiff sent
3  a cease and desist letter to Defendant.  Since the filing of the Complaint in June 2013,
4  Plaintiff has been aware that retail stores have been selling DURA REZ, that DURA
5  REZ and DURA REZN has been and is currently being advertised and sold on
6  Defendant's website, that DURA REZ was displayed at a Surf Expo in Orlando in
7  September 2013 and again on January 9, 2014.  However, Plaintiff waited until May
8  14, 2014 to file a temporary restraining order seeking to enjoin Defendant from
9  displaying DURA REZ or DURA REZN at a surf expo on May 17-18, 2014.  This
10 protracted delay demonstrates the lack of immediacy and urgency to warrant
11 irreparable harm.

12       In addition, besides a conclusory statement that Plaintiff will suffer irreparable
13 harm to its reputation and good will, Plaintiff has not provided any evidence to support
14 such a claim.  See Herb Reed Enters., LLC, 736 F.3d at 1251.  Accordingly, this factor
15 weighs against injunctive relief.

16       Because the Court finds Plaintiff has failed to establish irreparable harm, the
17 Court need not address the remaining preliminary injunction prongs.  See Cottrell, 632
18 F.3d at 1135 ("'[S]erious questions going to the merits' and a balance of hardships that
19 tips sharply towards the plaintiff can support issuance of a preliminary injunction, so
20 long as the plaintiff also shows that there is a likelihood of irreparable injury and that
21 the injunction is in the public interest." (emphasis added)).

22       However, because the state of the law on whether irreparable injury may be
23 presumed from a likelihood of success on the merits in a trademark case is not certain,
24 the Court addresses whether Plaintiff has demonstrated a likelihood of success on the
25 merits. Previously, the Ninth Circuit held that irreparable injury may be presumed from
26 a showing of likelihood of success on the merits.  GoTo.com, Inc. v. Walt Disney Co.,
27 202 F.3d 1199, 1205, n. 4 (9th Cir. 2000).   Since Winter was decided, it is unclear
28 whether this presumption applies.  Plaintiff asserts that under Marlyn Nutraceuticals,

Inc. v. Mucos Pharma GmbH& Co., 571 F.3d 873, 877 (9th Cir, 2009), a case decided after Winters, the court held that irreparable injury may be presumed from a showing of likelihood of success on the merits in a trademark case. However, a subsequent Ninth Circuit copyright case questioned the validity of that holding because it did not consider applicable recent case law. See Flexible Lifeline Sys., Inc. v. Precision Lift, Inc., 654 F.3d 989, 998 (9th Cir. 2011) (holding that presumption of irreparable harm is impermissible in copyright infringement cases).

Moreover, many district courts have held that a plaintiff is not granted the presumption of irreparable harm upon showing of likelihood of success on the merits in trademark cases. CytoSport, Inc. v. Vital Pharms., Inc., 617 F. Supp. 2d 1051, 1065 (E.D. Cal.2009); Seed Servs,, Inc. v. Winsor Grain, Inc., No. 1:10–CV–2185 AWI GSA, 2012 WL 1232320, at *4 (E.D. Cal. Apr.12, 2012) ("[T]he court will not assume the existence of irreparable injury due to a showing of success on the merits."); AFL Telecomm. LLC v. SurplusEQ.com, Inc., No. CV 11–01086–PHX–FJM, 2011 WL 4102214, at *3 (D.Ariz. Sept.14, 2011) ("Irreparable harm is no longer presumed in a trademark or copyright case upon a showing of a likelihood of success on the merits."); Mortgage Elec. Registration Sys. v. Brosnan, No. C 09–3600 SBA, 2009 WL 3647125, at *8 (N.D. Cal. Sept.4, 2009) ("[T]he Supreme Court's decision in Winter has effectively eliminated that presumption."); Volkswagen AG v. Verdier Microbus and Camper, Inc., No. C 09–00231 JSW, 2009 WL 928130, at *6 (N.D. Cal. Apr.3, 2009) ("The standard under Winter requires that [a plaintiff] demonstrate, by the introduction of admissible evidence and with a clear likelihood of success that the harm is real, imminent and significant, not just speculative or potential."); BoomerangIt, Inc. v. ID Armor, Inc., No. 12–CV–0920 EJD, 2012 WL 2368466 at *4 (N.D. Cal. Jun. 21, 2012); but see Otter Prods., LLC v. Berrios, No. CV 13–4384 RSWL, 2013 WL 5575070 at *11 (C.D. Cal. Oct.10, 2013) (applying presumption); Nordstrom, Inc. v. NoMoreRack Retail Group, Inc., No. C12–1853–RSM, 2013 WL 1196948 at *13 (W.D. Wash. Mar.25, 2013). Despite this uncertainty, the Court need not determine whether the

presumption applies because due to a lack of specific evidence at this time, Plaintiff has not demonstrated a likelihood of success on the merits.

**B.     Likelihood of Success on the Merits**

Plaintiff argues that it will succeed on the merits of its claim for federal trademark infringement. Defendant opposes and only addresses the similarity of the mark factor as to family of marks. It does not address any of the other seven factors required under the applicable standard.

The Lanham Act provides "national protection of trademarks in order to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." Park 'N Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 198 (1985). To prevail on a claim of trademark infringement, Plaintiff must prove "(1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1144 (9th Cir. 2011) (citation omitted); 15 U.S.C. § 1114.

**1.     Protectable Ownership Interest in the Mark**

Three ways exist for a party to establish a protectable interest "(1) it has a federally registered mark in goods or services; (2) its mark is descriptive but has acquired a secondary meaning in the market; or (3) it has a suggestive mark, which is inherently distinctive and protectable." Applied Information Sciences Corp. v. eBay, Inc., 511 F.3d 966, 969 (9th Cir. 2007). Registration of a mark on the Principal Register in the Patent and Trademark Office constitutes prima facie evidence of the validity of the registered mark and the registrant's exclusive use of the mark on the goods and serves specified in the registration. Id.; see also 15 U.S.C. § 1057(b) ("A certificate of registration of a mark . . . shall be prima facie evidence of the validity of the registered mark. . . .")

Plaintiff filed its registered trademark no. 2,802,579 to the Complaint. (Dkt. No. 1-2, Compl. Ex. A.) Defendant does not dispute the registration of the SOLAREZ

trademark. Thus, Plaintiff has a protectable ownership interest in the mark, SOLAREZ.

### 2. Likelihood of Confusion

"The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the of the good or service bearing one of the marks." Entrepreneur Medica, Inc. v. Smith, 279 F.3d 1135, 1140 (9th Cir. 2002). Under Sleekcraft, the court analyzes likelihood of confusion by looking at eight factors: "(1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) degree of care likely to be exercised by the consumer; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines." AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 352 (9th Cir. 1979). The factors are "pliant" with some factors being more important than others and the relative importance of each factor being case-specific. Brookfield Comms., Inc. v. West Coast Ent't Crop, 174 F.3d 1036, 1054 (9th Cir. 1999).

Plaintiff alleges that all factors, except likelihood of expansion of the product lines, will demonstrate likelihood of confusion. In its brief, Plaintiff generally alleges that the strength of the mark, proximity of the goods, similarity of the marks, evidence of actual confusion, market channels used, degree of care likely to be exercised by the consumer, and defendant's intent in selecting the mark will cause customer confusion support its position. However, specific evidence is not provided to support many of these factors. Many of these factor are fact specific inquiries. Due to the lack of specific evidence, the Court concludes Plaintiff has not demonstrated likelihood of confusion, and, as such, failed to demonstrate a likelihood of success on the merits.

## C. Balance of the Equities

Plaintiff contends that the balance of equities tip in its favor because its reputation and goodwill will be damaged that will be difficult to quantify. Defendant contends that it faces the threat of lost business if its distributors and retailers are subject to an injunctive order by the Court. The Court concludes that the balance of

the equities weighs in favor of Defendant due to the potential loss of Defendant's business compared with the loss of reputation and goodwill of Plaintiff's products especially since Defendant's alleged infringing conduct has been ongoing since at least December 2012.

Moreover, the Court has concerns whether if an injunction is issued, it would apply to distributors and retailers of Defendant. Plaintiff argues that Federal Rule of Civil Procedure 65(d)(2) provides that an injunction applies to "other persons who are in active concert" and therefore, the injunction should apply to distributors and retailers. Defendant opposes. Injunctions in federal court bind only the parties in a case. Zepeda v. INS, 395 U.S. 100, 112 (1969). A non-party may be bound if those persons are in "active concert or participation" with the defendant. See id. (a non-party with notice cannot be held in contempt until shown to be in active concert or participation with a defendant); see Steiniger v. Gerspach, No. CV10-8087-PCT-GMS, 2010 WL 2671767, at* 2 n. 1 (D. Az, July 2, 2010) (parties "provided [no] legal or factual basis that would allow the Court to enjoin a non-party); Jackson v. Runnels, No, CIV S-05-1531 KJJ EFB, 2008 WL 540075, at *2 (E.D. Cal. Feb. 25, 2008) ("only parties or non-parties with notice who are shown to be in active concert of participation with defendants may be enjoined"). Here, Plaintiff has not provided any evidence that Defendant's distributors and retailers are in "active concert" with Defendants. Accordingly, the Court concludes that the balance of the equities weigh in favor of Defendant.

**D.   Public Interest**

Plaintiff argues that there is a public interest in preventing the public from being deceived or confused. While Defendant does not oppose this factor, the Court concludes at this stage of the proceedings, there has been an inadequate showing that the public will likely be confused.

In sum, the Court concludes that Plaintiff has not made "a clear showing" that he is entitled to the "extraordinary remedy" of an injunction. Winter, 555 U.S. at 22.

**Conclusion**

Based on the above, the Court DENIES Plaintiff's *ex parte* application for temporary restraining order.

IT IS SO ORDERED.

DATED: May 20, 2014

HON. GONZALO P. CURIEL
United States District Judge