# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAHOO INTERNATIONAL, INC,<br><br>                              Plaintiff,<br>vs.<br><br>PHIX DOCTOR, INC., a Florida Corporation; and DOES 1-10,<br><br>                              Defendants.<br>_____<br>PHIX DOCTOR, INC., a Florida Corporation and ANTHONY GOWER, an individual,<br><br>                            Counter-Plaintiffs<br>vs.<br><br>WAHOO INTERNATIONAL, INC., a California Corporation; GARY FISHER, an individual; MARK CAPPA, an individual; and STAY COVERED, INC., and DOES 1-10,<br><br>                            Counter-Defendants | CASE NO. 13cv1395-GPC(BLM)<br><br>**ORDER GRANTING COUNTERDEFENDANTS' MOTION TO DISMISS AMENDED COUNTERCLAIM**<br><br>[Dkt. No. 107.] |

      Before the Court is Counterdefendants Wahoo International, Inc. ("Wahoo") and Gary Fisher's ("Fisher") motion to dismiss amended counterclaim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Dkt. No. 107.) On May 15, 2015, Counterdefendants Mark Cappa and Stay Covered, Inc.'s ("Stay Covered") filed a

notice of joinder to Wahoo and Fisher's motion to dismiss. (Dkt. No. 111.) On May 29, 2015, Counterclaimants Phix Doctor, Inc. and Anthony Gowen filed an opposition. (Dkt. No. 116.) Counterdefendants filed their replies. (Dkt. Nos. 117, 118.) Based on the reasoning below, the Court GRANTS Counterdefendants' motion to dismiss the amended counterclaim without leave to amend.

## Procedural Background

On December 19, 2014, Defendants and Counterclaimants Phix Doctor, Inc. ("Phix Doctor") and Anthony Gowen ("Gowen") filed a counterclaim against Plaintiff and Counterdefendants Wahoo International, Inc., ("Wahoo"), Gary Fisher ("Fisher"), and Mark Cappa ("Cappa") for antitrust violations pursuant to 15 U.S.C. § 2, and wire fraud pursuant to the Racketeer Influenced and Corrupt Organization Act ("RICO") statute,18 U.S.C. § 1343. (Dkt. No. 81 at 11.)

On February 19, 2015, the Court granted Counterdefendants' motion to dismiss with leave to amend. (Dkt. No. 101.) The Court concluded that the counterclaim failed to allege a claim under the Sherman Act and wire fraud under RICO. (Id.) On March 6, 2015, Counterclaimants filed an amended counterclaim against Wahoo and Fisher, and a third party complaint[1] against Stay Covered Inc. and its principal agent, Mark Cappa and added ten additional causes of action as to all Counterdefendants. (Dkt. No. 102.)

On May 1, 2015, Counterdefendants Fisher and Wahoo filed a motion to dismiss the amended counterclaim. (Dkt. No. 107.) On May 15, 2015, Mark Cappa and Stay Covered filed a notice of joinder in the motion. (Dkt. No. 111.) On May 29, 2015, Counterclaimants filed an opposition. (Dkt. No. 116.) On June 5, 2015, Counterdefendants filed their replies. (Dkt. Nos. 117, 118.)

---

[1] Phix Doctor and Gowen assert a counterclaim against Wahoo, Fisher, Cappa and Stay Covered. However, a counterclaim cannot be brought against a non-party. See Fed. R. Civ. P. 13. The claims against Cappa and Stay Covered should be called a third party complaint. However, "this is a distinction without a difference for the purposes" of this order. See Mortgages, Inc. v. U.S. Dist. Court for Dist. of Nev., 934 F.2d 209, 211 (9th Cir. 1991).

## Factual Background

Phix Doctor is a Florida corporation which sells resin for surfboards and other water related product repair. (Dkt. No. 102, Counterclaim ¶ 2.) Until August 2014, Phix Doctor was using the mark "Dura-Rezn" and prior to that "Dura-Rez." (Id.) Gowen is the President and main shareholder of Phix Doctor. (Id. ¶ 3.) Wahoo is a California corporation and a competitor in the resin industry with Phix Doctor. (Id. ¶ 4.) It conducts business in California and Florida. (Id.) Counterdefendant Fisher is the President of Wahoo. (Id. ¶ 5.) Mark Cappa is an agent of Phix Doctor and directly interfered with Phix Doctor's business relations. (Id. ¶ 6.) Stay Covered, Inc. is a California corporation which also contracts with Wahoo, and Cappa is its principal agent. (Id. ¶ 7.)

According to the amended counterclaim, the term "rez" has been trademarked in the resin industry since before the 1950s.[2] (Id. ¶ 10.) The term "rez" is a common and generic term for "resin." (Id.) In the 1980s, Sunrez was selling resin products to Wahoo and has overlapping business with Wahoo. (Id. ¶ 11.) One of Wahoo's product is a resin produced for repairing damage to fiberglass frames such as boats, surfboards, and pools. (Id. ¶ 12.) Wahoo trademarked "SOLAREZ" for its resin repair product and directly targets Florida and the rest of the country. (Id.) Phix Doctor also produced resin under the trademark name "Dura Rez" and was sued in the instant lawsuit for infringing "SOLAREZ." (Id. ¶ 13.) Wahoo claims it has a trademark on the suffix "rez" but it only has three registered trademarks, "Wahoo", "Bullyboard" and "SOLAREZ." (Id.) Moreover, there are other companies that also manufacture resin with the "rez" suffix which predate Wahoo's trademark. (Id.)

As Phix Doctor obtained more market share, Wahoo took notice and decided to hurt competition and its competitor. (Id. ¶ 14.) In December 2012, Wahoo directed its attorneys to send a cease and desist letter to Phix Doctor claiming it had ownership of

---

[2] Phix Doctor states it attached, as Exhibit A, the various trademarks using "rez"; however, there are no attachments to the amended counterclaim.

1 a family of marks, "rez", and that "Dura-Rez" was infringing its mark. (Id. ¶ 15.)

2 After discussions with Gary Fisher, he agreed that "Dura-Rezn" was an acceptable change to the mark to satisfy its claim of infringement. (Id. ¶ 16.) Phix Doctor relied on the agreement and statements from Fisher and spent significant resources to change its mark and branding. (Id. ¶¶ 16, 17.) The communications with Fisher were done via interstate channels of communications and/or U.S. mail. (Id. ¶ 16.) Fisher falsely represented that he would not pursue the infringement action when it made the representations to Phix Doctor regarding "Dura-Rezn." (Id. ¶ 17.) After Phix Doctor agreed to change its mark to "Dura-Rezn", Wahoo still insisted that its mark was being infringed upon. (Id. ¶ 18.)

Wahoo filed this case alleging trademark infringement, trademark dilution and other state law claims against Phix Doctor in June 2013 when it knew it had no reasonable belief in the allegations in the complaint or any reasonable belief "rez" was owned by Wahoo. (Id. ¶ 20.) The amended counterclaim alleges that Wahoo is a "trademark troll" by falsely claiming to have an exclusive right to the mark "rez" and bringing sham litigation against other competitors and attempting to extract a quick settlement and to hurt competition. (Id. ¶¶ 20-22.) Wahoo has used its position as the more established and senior producer of resin to prevent new competition from entering the market or thwarting new competition. (Id. ¶ 23.)

Moreover, since at least 2010, Wahoo was not using proper shipping labels as required when shipping hazardous material via U.S. mail. (Id. ¶ 24.) As a result, Wahoo paid less in shipping costs which gave it a competitive advantage in shipping resin products over its competitors that were properly labeling its products. (Id.) Furthermore, Wahoo is attempting to harm its competitor by filing this lawsuit, attempting to monopolize the mark, "rez", and harm Phix Doctor by having it expend money on legal fees. (Id. ¶ 25.) Counterclaimants assert that Wahoo's sham litigation and improper shipping allows it an anti-competitive advantage over competitors and impedes innovation. (Id. ¶ 27.)

Wahoo engaged in anti-competitive tactics when it, in July 2014, under the direction of Fisher, began sending cease and desist letters to distributors and retailers of Phix Doctor via interstate channels of communication such as facsimile, emails and letters that contained false allegations regarding its ownership of the "rez" trademark. (Id. ¶ 28.) Counterdefendants knew the letters were false, baseless and intended to disrupt the business relationships of Phix Doctor. (Id. ¶ 34.) When Phix Doctor informed Wahoo that it sold its rights to "Dura Rez" and "Dura-Rezn" to Sunrez, Inc., Wahoo has taken no steps to assert its trademark on Sunrez because its goal was directed at smaller competitors, such as Phix Doctor. (Id. ¶ 30.)

Phix Doctor[3] also believes that false information, through cease and desist letters, regarding ownership of the trademark was communicated to third party relationships of Phix Doctor but Wahoo did not intend to pursue litigation with the third parties. (Id. ¶ 31.) Wahoo intended to defraud third parties to end their business relationships with Phix Doctor. (Id. ¶ 32.) As a result, various independent sales agents of Phix Doctor and Wahoo were induced to stop selling Phix Doctor's products or sell more Wahoo's resin products. (Id. ¶ 33.)

In July 2014, Mark Cappa, an officer of Stay Covered, and one of Phix Doctor's representatives, told customers and distributors of Phix Doctor that they faced liability for selling its products. (Id. ¶ 35.) Cappa knew or was negligent in knowing the allegations were false. (Id.) Cappa was informed of the false information and instructed to participate in Wahoo's scheme and believed his company would profit by continuing to disseminate false information to its customers, which bought products from Wahoo and Phix Doctor. (Id. ¶ 37.) Counterdefendants were aware of the contractual and business relationship when they interfered and knowingly or falsely claims these third parties faced liability if they bought or sold Phix Doctor's products. (Id. ¶ 38.) As a result, various retailers and distributors refused to buy Phix Doctor's products due to

---

[3] While the allegation states "Wahoo", it appears that Counterclaimants are asserting Phix Doctor's belief. (Dkt. No. 102, Am. Counterclaim ¶ 31.)

threats and false statements. (Id. ¶ 39.) Phix Doctor was coerced into changing its trademark from "Dura-Rezn" to "Dura-Resin" to calm the fears of its customers. (Id. ¶ 39.)

Counterclaimants allege the following causes of action: (1) antitrust/Sherman Act § 2; (2) wire fraud under 18 U.S.C. § 1343; (3) mail fraud under 18 U.S.C. § 1341; (4) RICO under 18 U.S.C. § 1961 *et seq.*; (5) unfair business practices pursuant to California Business and Profession code sections 17200 *et seq.*; (6)&(7)[4] intentional interference with contractual relations under California and Florida law; (8) intentional interference with prospective economic relations under California and Florida law; (9) negligent interference with prospective economic advantage under California and Florida law; (10) defamation under Florida law; (11) fraud under Florida law; and (12) deceptive and unfair practices act under Florida law. (Dkt. No. 102 at 17-24.)

## A. Legal Standard on Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) ("Rule") permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. See Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

---

[4] (6) and (7) are the same causes of action.

for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. See Desoto, 957 F.2d at 658; Schreiber, 806 F.2d at 1401.

**B.    Legal Standard Under Federal Rule of Civil Procedure 9(b)**

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud . . ., a party must state with particularity the circumstances constituting fraud," while "[m]alice, intent, knowledge, and other conditions of a person's mind may be averred generally." Fed. R. Civ. P. 9(b). "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks omitted). "Any averments which do not meet that standard should be 'disregarded,' or 'stripped' from the claim for failure to satisfy Rule 9(b)." Id. Accordingly, "[t]o avoid dismissal for inadequacy under Rule 9(b), [the] complaint would need to state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."

Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004) (internal quotation marks omitted).

**C.     Sherman Act, 15 U.S.C. § 2**

Counterdefendants first argue that Counterclaimants have failed to correct the deficiency noted by the Court in the prior complaint by failing to allege that Wahoo possesses monopoly power in the relevant market. In the Court's previous order on the motion to dismiss the counterclaim, the Court held that "Phix Doctor failed to allege that Wahoo possessed monopoly power in the relevant market, which is one of the elements to state a monopolization claim under Section 2 of the Sherman Act. The relevant market is key to determining whether competition in the relevant product market has been negatively affected." (Dkt. No. 101 at 6.) Counterclaimants do not address this argument in their opposition. Instead, they state the elements of a claim of attempt to monopolize, which appear to not require the assertion of monopoly power in the relevant market.[5] (Dkt. No. 116 at 4.)

Section 2 of the Sherman Act makes it illegal to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations . . . ." 15 U.S.C. § 2. To state a monopolization claim under § 2 of the Sherman Act, a plaintiff must sufficiently allege that a defendant "(1) possessed monopoly power in the relevant market, (2) wilfully acquired or maintained that power through exclusionary conduct and (3) caused antitrust injury." MetroNet Servs. Corp. v. Qwest Corp., 383 F.3d 1124, 1130 (9th Cir. 2004).

To demonstrate attempted monopolization a plaintiff must prove "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." Cascade Health Solutions v. PeaceHealth, 515 F.3d 883, 893 (9th Cir. 2008) (citing Spectrum

---

[5]Based on their argument, it appears Counterclaimants are only asserting an attempt to monopolize cause of action, not monopolization.

Sports, Inc. v. McQuillan, 506 U.S. 447, 456 (1993) (internal quotations omitted)). However, in order to demonstrate probability of achieving monopoly power there must be a showing of the "relevant product and geographic markets and the defendant's economic power in that market." Spectrum Sports, Inc., 506 U.S. at 459.

While "defendant's power in the relevant market is not listed as an essential element of an attempt claim, such proof is relevant and often critical." Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc., 875 F.2d 1369, 1378 (9th Cir. 1989); M.A.P. Oil Co., Inc. v. Texaco, Inc., 691 F.2d 1303, 1309 (9th Cir. 1982) ("failure to define the relevant market was fatal to plaintiffs' attempt claim."); Verizon Commc'ns Inc. v. Law Offices of Curtis v. Trinko, LLP, 540 U.S. 398, 407 (2004) (the offense of monopolization or attempt to monopolize requires possession of monopoly power in the relevant market); InfoStream Group, Inc. v. PayPal, Inc., No. C 12–748 SI, 2012 WL 3731517 (N.D. Cal. Aug. 28, 2012) ("Plaintiffs have wholly failed to allege any specific facts with respect to the market power of their competitors, despite the fact that "demonstrating the dangerous probability of monopolization in an attempt case [ ] requires inquiry into the relevant product and geographic market and the defendant's economic power in that market.")

Monopoly power is "the power to control prices or exclude competition." United States v. Grinnell Corp., 384 U.S. 563, 571 (1966) (quoting United States v. E.I. du Pont de Nemours & Co., 351 U.S. 377, 391 (1956)). Under § 2, monopoly claims require a showing of monopoly power which is also commonly referred to as market power. See Cost Management Services, 99 F.3d 937, 950 n. 15 (1996) ("The terms 'market power' and 'monopoly power' are used interchangeably herein.").

Relevant market is determined by a "relevant product market and a relevant geographic market." Los Angeles Mem'l Coliseum Comm'n v. NFL, 726 F.2d 1381, 1392 (9th Cir. 1984). Illinois Tool Works Inc. v. Independent Ink, Inc., 547 U.S. 28, 42-43 (2006). "The relevant product market identifies the products or services that compete with each other, and the relevant geographic market identifies the area where

the competition in the relevant product market takes place." Sidibe v. Health, 51 F. Supp. 3d 870, 883 (N.D. Cal. 2014) (citing Los Angeles Mem'l Coliseum Comm'n, 726 F.2d at 1392).

While Counterclaimants assert Counterdefendants succeeded in their attempt to grow its monopoly power over the "resin, fiberglass, and particularly surfboard repair market", (Dkt. No. 102, Am Counterclaim ¶ 48), and generally assert that Wahoo is the "more established and senior producer of resin" such conclusory allegations without supporting facts are not sufficient to state a claim for attempted monopolization. Counterclaimants do not assert that Counterdefendants possessed monopoly power in the relevant market. In fact, the assertions are contradictory. As Wahoo points out, the amended counterclaim alleges that "[b]oth Wahoo and Phix Doctor are relatively small resin producers and competitors" which does not support monopoly power. (Dkt. No. 102, Am. Counterclaim ¶ 14.) While Counterclaimants assert that Wahoo attempted to gain market share, there is no assertion of market power. (Id. ¶ 33.) Moreover, they allege that Wahoo took no steps to assert its monopoly power over Sunrez and did not pursue litigation with third parties for selling allegedly infringing products. (Id. ¶¶ 30, 31.) These facts do not demonstrate anti-competitive conduct. Thus, the Court concludes that the amended counterclaim fails to state a claim for attempted monopolization under § 2 of the Sherman Act. Based on Counterclaimant's failure to allege monopoly power in the relevant market, the Court need not address Counterdefendants' other arguments.

Counterdefendants seek dismissal with prejudice because Counterclaimants may not amend the complaint to remove the allegation that Wahoo is a "relatively small resin producers" in order to allow amendment. A complaint can be amended to cure deficiencies in the complaint but it must be consistent with the challenge pleading and must not contradict the allegations in the original complaint. See Johnson v. Lucent Techs, Inc., 653 F.3d 1000, 1012 (9th Cir. 2011) (citing Reddy v. Litton Indus., Inc., 912 F.2d 291, 296-97 (9th Cir. 1990) (amended complaint may only allege "other facts

1 consistent with the challenged pleading."). Here, since the amended counterclaim
2 already alleges that Wahoo is a relatively small resin producer, it cannot allege a claim
3 for attempted monopolization. Thus, the Court GRANTS Counterdefendants' motion
4 to dismiss on the § 2 Sherman Act cause of action with prejudice.

**D.     Wire Fraud, 18 U.S.C. § 1343, and Mail Fraud, 18 U.S.C. § 1341**

In the amended counterclaim, Counterclaimants assert the predicate act of mail and wire fraud, 18 U.S.C. §§ 1341, 1343. The mail and wire fraud statutes contain three elements: (A) the formation of a scheme to defraud, (B) the use of the mails or wires in furtherance of that scheme, and (C) the specific intent to defraud. Ecletic Props. East, LLC v. Marcus & Millichap Co., 751 F.3d 990, 997 (9th Cir. 2014) (citing Schreiber Distrib. Co. v. Serv–Well Furniture Co., Inc., 806 F.2d 1393, 1399 (9th Cir. 1986)). Rule 9(b) applies to wire and mail fraud. Odom v. Microsoft Corp., 486 F.3d 541, 554 (9th Cir. 2007) "The only aspects of wire [or mail] fraud that require particularized allegations are the factual circumstances of the fraud itself." Id. (the formation of a scheme to defraud, and specific intent to defraud requires a showing of the defendants' states of mind so general allegations are sufficient).

Wahoo alleges that Phix Doctor has not changed its allegations which the Court previously found insufficient because it did not allege the time, place and parties involved. (Dkt. No. 101 at 11.) In opposition, Phix Doctor alleges that Wahoo's mailing of documents containing knowingly false statement is sufficient to establish mail fraud. (Dkt. No. 116 at 7.) The false statements made by Wahoo are that "rez' was protected, "Dura-Rez" was infringed, Wahoo would accept a modification of "Dura-Rezn" and third parties were liable for infringement or potentially liable. (Id. at 9.) Phix Doctor further contends that Wahoo's conduct with representatives and attorneys to threaten Phix Doctor with false statement and statements made to its customers are actionable. (Id.)

First, Wahoo alleges that the allegation that "Fisher agreed that 'Dura-Rezn' was an acceptable change to the mark to satisfy its frivolous claim of infringement" and

1  "falsely represented it would not pursue this anticompetitive infringement action when
2  it made the representation to Phix Doctor regarding Dura-Rezn" was not amended and
3  cannot state a claim. (Dkt. No. 102, Am. Counterclaim ¶¶ 16, 17.) The Court
4  previously concluded that Phix Doctor "failed to allege the time, place and the parties
5  involved concerning the alleged discussion." While Phix Doctor amended the claim by
6  adding "US mail" which was omitted from the original counterclaim, the remaining
7  claim as to the facts has not changed. Therefore, Phix Doctor has still failed to allege
8  the time, place and the parties involved concerning the alleged discussion.[6]
9  Accordingly, this allegation fails to comply with Rule 9(b).

10 Second, Wahoo contends that the allegation as to Mark Cappa, in July 2014,
11 when he allegedly told customers and distributors of Phix Doctor that they faced
12 liability for selling its products and he knew or was negligent in knowing the allegations
13 were false, also was not amended and does not sufficiently plead wire and mail fraud
14 under Rule 9(b). (Id. ¶ 35.) Despite the Court's prior ruling and reason why the Court
15 granted the motion to dismiss, the amended counterclaim fails to amend this assertion
16 by alleging which customers and distributors of Phix Doctor received such
17 communication and the method of communication. Therefore, this assertion again fails
18 to comply with Rule 9(b).

19 Next, Phix Doctor also asserts that under the direction of Fisher, Wahoo began
20 sending cease and desist letters via facsimile, emails and letters by U.S. mail to Phix
21 Doctor's distributors and retailers in July 2014 that contained knowingly false allegation
22 as to the trademark ownership. (Id. ¶ 28.) This allegation does not comply with Rule
23 9(b) because it does not state the place and identities of the parties to the
24 misrepresentation. See Edwards, 356 F.3d at 1066 (complaint "would need to state the
25 time, place, and specific content of the false representations as well as the identities of

---

[6] Wahoo argues this statement is barred by the litigation privilege pursuant to California Civil Code section 47. However, due to the failure of Phix Doctor to state a claim under RICO, the Court concludes that it need not address Wahoo's argument.

the parties to the misrepresentation.")

Lastly, Phix Doctor maintains that Phix Doctor also sent communication to third party relationships of various independent sale agents of Phix Doctor. (Id. ¶¶ 31, 32.) The allegation fails to allege the use of wire or mail, and does not allege the time, and the identities of the parties. Therefore, it does not have the requisite specificity required by Rule 9(b) to allege a fraud. See Edwards, 356 F.3d at 1066.

In sum, the Court concludes that the amended counterclaim fails to allege a claim for wire and mail fraud, and the Court GRANTS counterdefendants' motion to dismiss these causes of action.

**E.   RICO**

The elements of a RICO cause of action requires that a defendant "must participate in (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity or collection of unlawful debt." Eclectic Props., East, LLC v. Marcus & Millichap Co., 751 F.3d 990, 997 (9th Cir. 2014); see 18 U.S.C. § 1962(c). A "pattern of racketeering activity" requires at least two predicate acts. Clark v. Time Warner Cable, 523 F.3d 1110, 1116 (9th Cir. 2008); see 18 U.S.C. § 1961(5). The amended counterclaim asserts two predicate acts of wire fraud and mail fraud, 18 U.S.C. §§ 1341, 1343. Since Counterclaimants failed to properly allege the predicate acts of mail and wire fraud, the amended counterclaim fails to state a claim for relief under RICO. See Miller v. Yokohama Tire Corp., 358 F.3d 616, 620 (9th Cir. 2004) (because plaintiff failed to properly allege predicate acts of mail or wire fraud, the complaint does not state any claim for relief under RICO).

**F.   UCL Claim**

Counterdefendants argue that this claim should be dismissed. Counterclaimants assert that their UCL claim is based on the "unlawful" prong of the UCL and sufficiently allege a cause of action. (Dkt. No. 116 at 11.)

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each of these three adjectives captures a separate and

distinct theory of liability." Rubio v. Capital One Bank, 613 F.3d 1195, 1203 (9th Cir. 2010) (quotation marks omitted). Section 17200 "borrows" violations of other laws and treats them as unlawful practices independently actionable under section 17200. Id. Counterclaimants' UCL claim is based on the "acts of shipping improperly[7] and acts to interfere with Phix Doctor business relationships with false statements and bad faith threats . . . ." (Dkt. No. 102, Am. Counterclaim ¶ 70.) These allegations are based on § 2 of the Sherman Act and the RICO causes of action.

Since the Court granted Counterdefendants' motion to dismiss as to the Sherman Act, and wire/mail fraud, and RICO causes of action, the Court also GRANTS their motion to dismiss on the unfair business practices pursuant to California Business & Professions Code section 17200.

## G.     Remaining Causes of Action

Counterclaimants move to dismiss on the remaining causes of action for (6), (7) intentional interference with contractual relations under California and Florida law; (8) intentional interference with prospective economic relations under California and Florida law; (9) negligent interference with prospective economic advantage under California and Florida law; (10) defamation under Florida law; (11) fraud under Florida law; and (12) deceptive and unfair practices act under Florida law. In their opposition, Counterclaimants failed to oppose counterdefendants' motion to dismiss based on these causes of action.

Their failure to respond to the arguments raised by counterclaimants on these claims constitutes an abandonment of these claims and dismissal is appropriate. Jenkins v. County of Riverside, 398 F.3d 1093, 1095 n. 4 (9th Cir. 2005) (plaintiff "abandoned her other two claims by not raising them in opposition to the County's motion for summary judgment"); see also Walsh v. Nev. Dep't of Human Resources, 471 F.3d 1033, 1037 (9th Cir. 2006) (where opposition to motion to dismiss failed to

---

[7]Alleged improper shipping labels appear to relate to the antitrust cause of action.

address arguments in motion to dismiss, the plaintiff failed to demonstrate a continuing interest in pursuing a claim for relief and it was "effectively abandoned" and could not be raised on appeal.); In re TFT-LCD (Flat Panel) Antitrust Litigation, 586 F. Supp. 2d 1109, 1131 (N.D. Cal. 2008). Accordingly, the Court GRANTS counterdefendants' motion to dismiss the causes of action for intentional interference with contractual relations, intentional interference with prospective economic relations, negligent interference with prospective economic advantage, defamation, fraud, and deceptive and unfair practices act under Florida law.

### H.   Leave to Amend or Futility of Amendment

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" DeSoto, 957 F.2d at 658 (quoting Schreiber Distrib. Co., 806 F.2d at 1401. In other words, where leave to amend would be futile, the Court may deny leave to amend. See Desoto, 957 F.2d at 658; Schreiber, 806 F.2d at 1401. The Court must determine whether a second chance for leave to amend should be granted on the RICO causes of action.

In the Court's prior order, it provided Counterclaimants leave to amend the complaint to correct the deficiencies in their allegations which they failed to correct in the amended counterclaim. Instead, Counterclaimants added ten additional causes of action in the counterclaim. This required Counterdefendants to file a brief on each of these causes of action in their motion to dismiss, and in opposition, Counterclaimants fail to oppose. This has caused undue delay and prejudice to the opposing party and a waste of judicial resources. See SissetonWahpeton Sioux Tribe v. United States, 90 F.3d 351, 355 (9th Cir.1996) (the Court's discretion to deny or grant leave to amend is particularly broad where Plaintiff has previously been permitted to amend his complaint and court looks at five factors in determining whether denial of leave to amend was an abuse of discretion).

Where Plaintiff was previously given leave to amend to correct the deficiencies

in the amended counterclaims previously identified by the Court and failed to do so, the Court can conclude that further leave to amend would be futile. See Barkett v. Sentosa Props., LLC, No. 14cv1698-LJO-JLT, 2015 WL 3756348, at *8 (E.D. Cal. June 16, 2015). Therefore, the Court concludes that leave to amend the RICO causes of action would be futile and the Court DENIES Counterclaimants leave to amend.

## Conclusion

Based on the above, the Court GRANTS Counterdefendants' motion to dismiss the counterclaim without leave to amend. The hearing set for June 26, 2015 shall be **vacated.**

IT IS SO ORDERED.

DATED: June 23, 2015

HON. GONZALO P. CURIEL
United States District Judge